IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:08-cv-812-MEF |
| | ) | |
| MACON COUNTY GREYHOUND PARK, INC. | ) | (Designated for Publication) |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Arrowood Indemnity Company ("Arrowood") brings this declaratory judgment action against Macon County Greyhound Park, Inc. ("MCGP"), asking this Court to declare that Arrowood, as MCGP's excess-liability insurer, is not liable to indemnify MCGP on the underlying bodily-injury judgment against MCGP. (Doc. # 2). The parties have filed cross Motions for Summary Judgment. (Docs. # 46, 47). For the reasons set out below, Arrowood's Motion for Summary Judgment is GRANTED, and MCGP's Motion for Summary Judgment is DENIED.

### II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), based on the diversity of the parties and an amount in controversy in excess of

$75,000.  The parties do not assert that this Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56(c)  is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  The Court must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion

for summary judgment, the court must grant summary judgment if there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(c).

## IV. FACTS[1] AND PROCEDURAL HISTORY

In 2003, Ronnie Lawrence ("Lawrence"), a patron of MCGP, slipped and fell

while using the restroom at MCGP.  (Doc. # 46 Ex. A, Attachment C).  At the time,

MCGP carried a primary-liability commercial insurance policy issued by United States

Fidelity & Guarantee Company ("primary-liability policy" or "USF&G policy"), which

provided up to $1 million of coverage per occurrence.  (Doc # 46 Ex. A, Attachment A).

MCGP also carried an excess-liability policy, which is the subject of the present suit.  The

Big Shield Commercial Catastrophe Liability Policy ("excess-liability policy"), issued by

Arrowood's predecessor, provided up to $5 million in coverage beyond the coverage

provided by the USF&G policy.  (Doc. # 46 Ex. A, Attachment B).  In order to seek

coverage under the excess-liability policy, MCGP was required to:

> a)   see to it that [Arrowood is] notified as soon as practicable of an
> "occurrence" or an offense which may result in a claim or "suit."  To the
> extent possible, notice should include:
> > 1) How, when, and where the "occurrence" or offense took
> > place;

---

[1]The facts set out here are drawn from Arrowood's Complaint for Declaratory Judgment
(Doc. #2), MCGP's Answer and Counterclaim (Doc. # 32), MCGP's Motion for Summary
Judgment (Doc. # 46) and relevant responses and replies, and Arrowood's Motion for Summary
Judgment (Doc. # 47) and relevant responses and replies.

> 2) The names and addresses of any injured persons and
> witnesses; and
> 3) The nature and location of any injury or damage arising out of the
> "occurrence" or offense. . .

(Doc. # 46 Ex. A, Attachment B at 14).  The policy also provided that:

> d)   If a claim is made or a "suit" is brought against any insured when such
> claim or "suit" is reasonably likely to involve this policy, you must:
> > 1) Immediately record the specifics of the claim or "suit" and the
> > date received; and
> > 2) Notify us as soon as practicable.

*Id.* at 14–15.

In the event that MCGP did not give appropriate notice to Arrowood, the policy

provided the following savings clause:

> c)   Your rights under this policy shall not be prejudiced if you fail to give
> us notice of an "occurrence," offense, or claim solely due to your
> reasonable and documented belief that the "occurrence," offense, or claim
> is not covered under this policy.

*Id.* at 14.  The policy defines the word "occurrence" as "an accident, including continuous

or repeated exposure to substantially the same general harmful conditions."  *Id.* at 11.

"Suit" is defined as "a civil proceeding in which damages because of 'bodily injury' . . .

to which this insurance applies are alleged."  *Id.* at 12.

In 2005, Lawrence filed a lawsuit in the Circuit Court of Macon County, Alabama

("the Lawrence suit"), seeking damages for the back and neck injuries he suffered after

falling on MCGP's premises.  (Doc. # 46 Ex. A, Attachment C).   USF&G and the

primary-liability policy's third-party administrator American Specialty Insurance

4

Services, Inc.  ("American Specialty") handled the investigation and defense of this suit. (Doc. # 46 Ex. A ¶ 8). During the pendency of the Lawrence lawsuit, Lee Yates ("Yates"), MCGP's Chief Financial Officer, was given periodic updates on the case by David Wells ("Wells"), counsel selected by American Specialty.  (Doc. # 46 Ex. A, Attachments D–F).  In his letter to Yates dated July 19, 2005, Wells indicated that, in his opinion, the Lawrence suit was "a case of questionable liability which I believe is defendable."  (Doc. # 46 Ex. A, Attachment D at 3).  In his letter to Yates dated August 23, 2005, Wells again asserted that the Lawrence suit was one of questionable liability, based on highly questionable causation.  (Doc. # 46 Ex. A, Attachment E at 3).  In his letter dated February 17, 2006, Wells described Lawrence's deposition and the holes that he saw in Lawrence's testimony.  (Doc. # 46 Ex. A, Attachment F).   None of these letters placed a numerical value on the Lawrence suit or discussed the potential  applicability of the Arrowood policy to the Lawrence suit.

During the years 2005, 2006, and 2007, Yates met with Crawford E. McInnis ("McInnis"), MCGP's insurance agent. (Doc. # 46 Ex. B ¶¶ 3, 7, 8).  During those meetings, Yates and McInnis reviewed loss runs provided by American Specialty.  *Id.* ¶ 8. These loss runs indicated that American Specialty and USF&G had set aside only $13,000 in claim reserves for the bodily injury damages expected in the Lawrence suit.  (Doc. # 46 Ex. B, Attachment C).  McInnis states in his affidavit that the claims reserves established by insurance carriers are "indicative" of the monetary exposure the carrier believes a

claim poses.  (Doc. # 46 Ex. B ¶ 8).

In 2007, American Specialty transferred the defense of the case to attorney Stanley
Gray ("Gray").  (Doc. # 46 Ex. A ¶ 12).  There is no evidence that Gray informed Yates
of the progress of the Lawrence suit after Gray's firm took over the defense of the
Lawrence suit.  *Id.*  However, the suit continued to progress, and further developments in
the case indicated that a high verdict was reasonably likely.

For example, Lawrence consistently valued his case at about $1 million.[2]  At the
April 11, 2007 mediation, Lawrence initially demanded $1.5 million to settle the case.
(Doc. # 48 Ex. B, Attachment 8).  Lawrence refused to make a reduced offer at that time.
*Id.*  A second mediation was held September 21, 2007.  (Doc. # 48 Ex. B, Attachment 8).
Lawrence again demanded $1.5 million.  *Id.*  On January 28, 2008, Lawrence's counsel
indicated that he would settle the case for $950,000.  (Doc. # 48 Ex. B, Attachment 16).

The evidence also demonstrates that those involved in the Lawrence suit
understood Macon County to be a venue in which high jury verdicts were common.
Wells documented his belief that "six and seven figure verdicts are routine in Macon

---

[2]  There is some evidence that an employee of MCGP did in fact know that Lawrence was
demanding over $1 million to settle his lawsuit.  Gray sent a letter dated January 25, 2008 to
Lewis Bennefield, an employee of MCGP, which reads "the plaintiff was seeking an amount in
excess of the policy limits of $1,000,000."  (Doc. 48 Ex. B, Attachment 15).  The letter indicates
it was also sent to Milton McGregor, MCGP's owner.  *Id.*  A handwritten note on the letter
indicates it was also given to Yates.  *Id.*  However, Yates indicated in his deposition that he
didn't recall reading the letter and that he believed the matter had been handled by someone else.
(Doc. 48 Ex. B at 121–22).

County." (Doc. # 48 Ex. B, Attachment 7).  Gray warned American Specialty that "a jury could return a verdict of $400,000 or more. . . . [T]his is a plaintiff oriented venue." (Doc. # 46 Ex. D, Attachment B).  Well's post-mediation report for the April 11, 2007 mediation session related the mediator's belief that due to MCGP's financial prosperity, he would not be surprised to see a substantial verdict for Lawrence in the case, falling somewhere between $400,000 and $750,000.[3]  (Doc. # 48 Ex. B, Attachment 7). Communications between American Specialty employees demonstrates that they also were wary of the venue.  (*See* Doc. # 48 Ex. B, Attachment 9, "You don't want to try a punitive damages case in Alabama.")

On February 14, 2008, the jury returned a $1.5 million verdict in favor of Lawrence and against MCGP.  (Doc. # 46 Ex. A, Attachment G).  This amount exceeded the USF&G policy limits by $500,000.  MCPG sent notice of the verdict in the Lawrence suit to Arrowood's Claims Executive by letter dated February 26, 2008, nearly two weeks after the verdict was returned.  *Id.*  On September 29, 2008, MCGP appealed the verdict in the Lawrence suit.  (Doc. # 46 Ex. A ¶ 15).  The Macon County Circuit Court required MCGP to post an appeal bond in the amount of $2 million.  *Id.*  USF&G posted $1 million, the maximum amount of liability coverage provided by the USF&G policy.  *Id.* MCGP asked Arrowood to post the remaining $1 million, but Arrowood refused to do so

---

[3]  Whether or not the mediator actually related these statements is irrelevant.  The information was contained in a post-mediation report from defense counsel to American Specialty.  If MCGP had kept apprised of the Lawrence case, it too would have had the benefit of the post-mediation report.

on the basis that it had not received timely notice of the Lawrence suit, as required by the excess-liability policy. *Id.*

On October 3, 2008, Arrowood filed this declaratory judgment action, asking the Court to declare that, due to MCGP's failure to give timely notice of the Lawrence suit, Arrowood is not obligated under the policy to indemnify MCGP for the judgment rendered in the Lawrence suit.[4]  (Doc. # 2).  At the request of the parties, the Court stayed the declaratory judgment action pending the outcome of the appeal in the Lawrence suit. (Doc. # 13).   The Alabama Supreme Court affirmed the judgment in the Lawrence case, and denied MCGP's motion for rehearing.  (Doc. # 26).

After losing on appeal in the Lawrence case, MCGP filed an Answer and Counterclaim in the declaratory judgment action.  (Doc. # 32).  Count One of the Counterclaim seeks compensatory damages for Arrowood's alleged breach of its contract with MCGP.  *Id.*  Count Two sought compensatory and punitive damages for Arrowood's alleged breach of the duty of good faith and fair dealing.  *Id.*  Count Two of the Counterclaim has since been dismissed without prejudice pursuant to the stipulation of the parties.  (Doc. # 42).  Arrowood answered MCGP's Counterclaim, raising several affirmative defenses.  (Doc. # 37).

MCGP filed for summary judgment on April 8, 2010, requesting that the Court

---

[4] Lawrence was originally joined as a defendant in this suit. (Doc. # 2).  He was dismissed from the suit without court order pursuant to the parties' Joint Stipulation of Dismissal.  (Doc. # 36).

grant summary judgment in its favor both on Arrowood's declaratory judgment and on MCGP's Counterclaim for breach of contract.  (Doc. # 46).  Arrowood filed for summary judgment the same day, requesting that the Court grant summary judgment in its favor on both the request for declaratory judgment and MCGP's counterclaim for breach of contract.  (Doc. # 47).  A limited scheduling order has been entered in this case, but the matter has not yet been set for trial.  (Doc. # 40).

## DISCUSSION

### I. Arguments of the Parties:

The core of this dispute turns on three provisions in the excess-liability policy.  As explained *infra*, the excess-liability policy required MCGP to give notice to Arrowood, as soon as practicable, of any occurrence that might result in a claim or suit.  (Doc. # 46 Ex. A, Attachment B at 15).  The policy also required MCGP to give notice of a suit or claim if that suit or claim was reasonably likely to involve the excess-liability policy.  If notice was not given as required by the policy, Arrowood would have no duty to indemnify unless MCGP's failure to give notice was based on a "reasonable and documented belief" that the occurrence or claim was not covered under the excess-liability policy.  Arrowood argues that as a matter of law, MCGP's notice of the Lawrence suit was not sufficient under either clause of the policy, and therefore Arrowood is not legally bound to indemnify MCGP.  (Doc. # 47).  MCGP argues that as a matter of law, the notice it gave Arrowood was sufficient and that Arrowood is legally bound to indemnify MCGP.  (Doc.

9

# 46).  MCGP also argues that, because it gave sufficient notice and Arrowood subsequently refused to indemnify MCGP, Arrowood has, as a matter of law, breached the insurance contract between the parties.  (Doc. # 46).

It is undisputed that the earliest, and only, notice given to Arrowood of the Lawrence suit occurred two weeks after the verdict had been returned in that case.  Arrowood claims that notice after a verdict had been returned was not "as soon as practicable" as required by the policy.  Arrowood also argues that MCGP cannot establish a documented belief that the excess-liability policy would not be implicated by the Lawrence suit and therefore cannot receive the protection of the policy's savings clause.  MCGP argues that they had no reason to believe that the Lawrence suit would in any way implicate the excess-liability policy until a verdict exceeding the primary-liability policy was returned.  Therefore, they argue that notice given two weeks after a verdict had been returned in the Lawrence case was as soon as practicable.

## II.  Late Notice:

Under Alabama law, the phrase "as soon as practicable," when used in the context of notice, is construed to require notice "within a reasonable time in view of the facts and circumstances of the case."  *Progressive Specialty Ins. Co. v. Steele ex rel. Steele*, 985 So. 2d 932, 941 (Ala. Civ. App. 2007); *Haston v. Transamerica Ins. Servs.*, 662 So. 2d 1138, 1141 (Ala. 1995); *State Farm Fire & Gas Co. v. Wiggins*, 972 F. Supp. 570, 573 (M.D. Ala. 1997).  When determining whether or not a delay in giving notice was reasonable,

only two factors may be considered: the length of the delay and the reasons given for the delay. *Haston*, 662 So. 2d at 1141 ("Under Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer: the *length* of delay and the *reasons* for the delay.") (emphasis in original). If there are disputed facts, "the question of the reasonableness of a delay in giving notice is a question of fact for the jury." *Id.* However, if there is no reasonable excuse offered for a delay in giving notice, the issue may be decided as a matter of law. *Id.* Even if the delay is found to be unreasonable, an excess insurer cannot disclaim liability for an insured's violation of the notice provisions unless the excess insurer can show that the delay caused prejudice. *Midwest Emp'rs Cas. Co. v. E. Ala. Health Care*, 695 So. 2d 1169, 1173 (Ala. 1997); *Lemuel v. Admiral Ins. Co.*, 414 F. Supp. 2d 1037 (M.D. Ala. 2006), *aff'd sub nom. Lemuel v. Lifestar Response of Ala., Inc.,* No. 06-11155, 2007 WL 578097 (11th Cir. 2007).

### A. Unreasonable Delay:

There are three relevant provisions of the insurance policy that affect MCGP's duty to give Arrowood notice of the Lawrence suit. Each will be discussed in turn.

### i. Provision VIII(5)(a):

The first provision, VIII(5)(a), quoted in its entirety above, requires MCGP to notify Arrowood "as soon as practicable" of an occurrence, defined as an accident, which may result in a claim or suit. (Doc. # 46 Ex. A, Attachment B at 14). The parties do not

dispute that Lawrence's accident in the MCGP restroom falls within the definition of "occurrence" as used in the excess-liability policy. Therefore, MCGP's duty to give notice may have been triggered when an executive officer of MCGP became aware of Lawrence's accident. (*See* Doc. # 46 Ex. A, Attachment B at 14). The undisputed evidence is that on February 3, 2003, MCGP employees wrote up an Incident Report, a Medical Report, and an Offense Report in response to Lawrence's accident. (Doc. # 48 Ex. F).

However, the excess-liability policy requires notice as soon as practicable of an occurrence *only* when the occurrence is known to "an 'executive officer' or the 'employee' designated by you to give such notice, if you are a corporation." (Doc. # 46 Ex. A, Attachment B at 14). Neither side has submitted evidence regarding when, if at any time before the Lawrence suit was filed, an executive knew about Lawrence's accident. In fact, Yates indicated in his deposition that he is not typically informed of an accident unless and until an injured patron "go[es] beyond" simply filing an incident report. (Doc. # 48 Ex. A at 21). There is no evidence before this Court that Lawrence took any action with respect to his claim until he filed a lawsuit in February, 2005. As such, this Court cannot reach the conclusion that MCGP's duty to notify Arrowood was triggered under the above cited policy provision. If the Court cannot conclude as a matter of law that MCGP's duty to notify had been triggered under this provision, the Court also cannot conclude that MCGP was, as a matter of law, either reasonable or unreasonable in

giving notice to Arrowood under this provision of the policy.

### ii. Provision VIII(5)(d):

There is, however, a second provision of the excess-liability policy which could trigger MCGP's duty to give notice.  This provision, VIII(5)(d), applies specifically to claims made or suits brought against the insured, and not to occurrences or offenses. (Doc. # 46 Ex. A, Attachment B at 14).  Unlike provision VIII(5)(a) discussed above, provision VIII(5)(d) only requires notice as soon as practicable of claims or suits that are "reasonably likely to involve" the excess-liability policy.  *Id.*  This language has not been construed by an Alabama court to date.  However, the Alabama Supreme Court has found, even in the absence of similar policy language, that the test for whether notice is necessary under the policy is "not a subjective one measured merely by the good faith of the insured, but is an objective one."  *Pan Am. Fire & Cas. Co. v. DeKalb-Cherokee Cntys. Gas District*, 266 So. 2d 763, 771 (Ala. 1972) (citing 45 C.J.S. *Insurance* § 1056).[5] Therefore, the insured's subjective belief that the accident will not implicate the insurance policy "is not of itself an excuse for failure to give notice of the accident to the insurer." *Id.*

However, under Alabama law, the reasons for the delay in giving notice are one of

---

[5]  The *Pan American* case arose in the context of an appeal from the trial court's decision that a primary insurer had a duty to defend its insured against suit arising from the explosion of a gas heater.  *Pan Am. Fire*, 266 So. 2d at 764.  While certain aspects of Alabama law differ between cases involving primary insurers and excess insurers, this Court has no reason to believe that Alabama courts would apply this point of law differently between the two categories of insurers.  *See Midwest Emp'rs*, 695 So. 2d at 1173.

the two factors that can be considered by the Court in determining whether the delay was reasonable. *See Haston*, 662 So. 2d at 1141. Therefore, MCGP's belief that the Lawrence suit was not reasonably likely to involve the excess-liability policy is pertinent to the Court's determination of whether delay was reasonable, as that belief is the sole reason that MCGP provides for the delay. However, MCGP's belief is not determinative of the issue unless, as measured by an objective standard, MCGP's belief was reasonable.[6]

Generally, the question of whether a delay in giving notice was reasonable is a question for the jury. *Id.* However, if "no reasonable excuse [is] offered for a delay in giving notice, the issue may be decided as a matter of law." *Id.*; *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882–3 (Ala. 1976) ("[w]here the facts are undisputed and only one conclusion is reasonably possible, the question whether or not the insured under a liability policy complied with the requirements of notice is a question of law for the court.") The only excuse given by MCGP for the delay in notice is that MCGP could not

---

[6] The Eleventh Circuit, although applying Georgia law, agrees with the underlying policy reasons for the application of this standard, despite MCGP's argument to the contrary. *See Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F.3d 852, 860–61 (11th Cir. 1997). The Court recognized that notice to an excess insurer is generally only required when the claim is reasonably likely to involve the excess policy, as excess carriers "are not interested in receiving notice of every claim against their insureds." *Id.* at 860. Therefore, someone will have to make a determination of whether or not the policy is reasonably likely to be implicated. *Id.* "The insured's appraisal will have to control unless, as a matter of law, it is unreasonable." *Id.* So, the insured's appraisal is pertinent to the inquiry, but only to the extent that the insured's appraisal is not unreasonable as a matter of law. The Eleventh Circuit was not applying a purely subjective standard, as the insured's beliefs regarding the application of the excess policy was not determinative of the inquiry. *Id.* The insured's belief was only controlling if it was *reasonable*.

have reasonably foreseen that the Lawrence suit would involve the excess-liability policy. However, considering the information that was available to MCGP regarding the Lawrence suit, the Court finds that MCGP's belief that the Lawrence suit would not implicate the excess-liability policy was objectively unreasonable. Therefore, MCGP has presented no reasonable excuse for the delay in giving notice to Arrowood.

The facts regarding MCGP's knowledge about the value of Lawrence suit are undisputed. Lawrence filed his complaint in state court on February 3, 2005. This complaint contained no indication of the amount of damages involved, only that both compensatory and punitive damages would be sought. (Doc. # 46 Ex. A, Attachment C). Yates communicated with Wells about the case via letter from February 23, 2005 until at least July 29, 2006. (Doc. # 46 Ex. A, Attachment D–F; Doc. # 48 Ex. B, Attachment 3 at 60–68). None of these letters provide an overall evaluation of the Lawrence suit, and none mention anything about an excess-liability policy. At most, the letters discuss individual medical records and the documented cost of specific procedures that Lawrence received. (*See* Doc. # 48 Ex. B, Attachment 3 at 60, 68).

While Wells continued to send status reports about the case to American Specialty, including a pre- and post-mediation report, Yates did not receive copies of any of these letters. There is no evidence that Yates or any other representative of MCGP received any information about the case from the attorneys defending it between the summer of 2006 and February 2008 when the verdict in the Lawrence case was returned.

15

An insured's failure to keep apprised of claims pending against it is no excuse for failure to give an excess-liability insurer notice, however.  Accordingly, this Court must also review the information about the case that was available to MCGP, regardless of whether or not MCGP was actually aware of the information.

Lawrence consistently valued his case at about $1 million.  At the April 11, 2007 mediation, Lawrence initially demanded $1.5 million to settle the case.   (Doc. # 48 Ex. B, Attachment 8).  Lawrence refused to make a reduced offer at that time.  *Id.*  A second mediation was held September 21, 2007.  (Doc. # 48 Ex. B, Attachment 8).  Lawrence again demanded $1.5 million.  *Id.*  On January 28, 2008, Lawrence's counsel indicated that he would settle the case for $950,000.  (Doc. # 48 Ex. B, Attachment 16).

Several parties involved in the Lawrence suit understood Macon County to be a venue where high jury verdicts were not uncommon.  Wells documented his belief that "six and seven figure verdicts are routine in Macon County" in his pre-mediation report dated April 4, 2007.  (Doc. # 48 Ex. B, Attachment 7).  Gray warned American Specialty in his pre-trial report dated August 10, 2007 that "a jury could return a verdict of $400,000 or more. . . . [T]his is a plaintiff oriented venue."  (Doc. # 46 Ex. D, Attachment A).  Well's post-mediation report for the April 11, 2007 mediation session related the mediator's belief that due to MCGP's financial prosperity, he would not be surprised to see a substantial Plaintiff's verdict in the case, falling somewhere between $400,000 and $750,000.  (Doc. # 48 Ex. B, Attachment 8).  Communications between American

Specialty employees dated April 17 and 18, 2007 demonstrate that they also were wary of the venue. (*See* Doc. # 48 Ex. B, Attachment 9, "You don't want to try a punitive damages case in Alabama.")

Considering all of the information available to MCGP regarding the value of the Lawrence suit, MCGP's belief that the suit would not implicate the excess-liability policy was objectively unreasonable. Lawrence consistently demanded near or in excess of the primary-liability policy limits to settle his case. Additionally, Lawrence sought punitive damages in a county that MCGP's attorneys believed to be a liberal, plaintiff oriented venue. In other words, while MCGP may not have agreed with Lawrence's assessment of his case, a verdict that high was within the realm of possibility. Therefore, MCGP has not presented the Court with an objectively reasonable excuse for its delayed notice to Arrowood.

MCGP argues in its Motion that Lawrence's demands in excess of the primary-liability policy limits did not create a duty to notify Arrowood. (Doc. # 45 at 19–20). In support of this argument, it analogizes a settlement demand to an *ad damnum* clause in a complaint, which the Eleventh and Fifth Circuits have held do not, in and of themselves, trigger a duty to notify. *See Evanston Ins.*, 111 F.3d at 861; *Harbor Ins. Co. v. Trammell Crow Co.*, 854 F.2d 94, 99 (5th Cir. 1988). This Court does not agree with MCGP's analogy. A settlement demand made at mediation, after considerable discovery has been completed, is a significantly better measure of the value of a case than the *ad damnum*

17

clause of a complaint.   Additionally, Lawrence's settlement demand was not inconsistent with defense counsel's experience with Macon County juries.  This case is therefore distinguishable from *Evanston*, in which the demands made by the plaintiff in the underlying suit were "not consistent with the evaluations of those associated with the case at that time."  111 F.3d at 861.

MCGP also argues that it didn't have a duty to notify because neither it's insurance agent McInnis nor it's defense attorneys Wells and Gray advised it to give notice to Arrowood.  However, an insured cannot rely on the appraisals of its agents and attorneys when the insured itself is not apprised at all of the progress of the case.  It is the insured's burden to notify the excess-liability insurer if necessary, and MCGP was not entitled to rely solely on the evaluations of defense attorneys and insurance agents.  Additionally, MCGP has presented no evidence that its attorneys even knew an excess policy existed. In fact, the undisputed evidence is to the contrary.  In an email dated February 17, 2008, Champ Lyons, trial counsel for Lawrence, asks Gray whether MCGP had an excess carrier.  (Doc. # 48 Exhibit D).  Gray responds that he "know[s] of no excess carrier."  *Id.* By the time it became obvious that the excess carrier needed to be notified about the Lawrence suit, MCGP had stopped receiving any updates on the case.  Therefore, it cannot claim to have relied on its attorney's evaluations.  An insured cannot claim to have relied on evaluations of the case of which it was not aware.

The fact that MCGP presented no reasonable excuse for its delayed notice is

18

sufficient to find that MCGP's notice was unreasonable as a matter of law. *Haston*, 662 So. 2d at 1141 ("But if there is no reasonable excuse offered for a delay in giving notice, the issue may be decided as a matter of law.").  However, the second factor the Court can consider—the length of the delay—also weighs in favor of finding MCGP's delay unreasonable.  The Court need not determine the exact point in time at which MCGP's duty to notify arose.  However, by September 2007, MCGP had available to it substantial evidence that a verdict greater than the USF&G policy limits was reasonably likely. Therefore, at a minimum, the delay in giving notice to Arrowood was longer than five months.

Alabama courts have previously found delays of six months, eight months, and one year to be unreasonable as a matter of law.  *See id.*; *Thomas*, 334 So. 2d at 883 (Ala. 1976) (holding a six-month delay without excuse unreasonable as a matter of law); *Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983) (holding an eight-month delay without excuse unreasonable as a matter of law); *Correll v. Fireman's Fund Ins. Cos.*, 529 So. 2d 1006, 1009 (Ala. 1988).  The lengthy delay and lack of reasonable excuse presented by MCGP cause this Court to find that MCGP's delay in giving notice to Arrowood was unreasonable as a matter of law.

### ii.  The Savings Clause:

The excess-liability policy provides that even if MCGP failed to give notice to Arrowood, MCGP's rights would not be prejudiced under the policy if MCGP failed to

give notice "solely due to [its] reasonable and document belief that the 'occurrence,' offense, or claim is not covered under this policy." (Doc. # 46 Ex. A, Attachment B at 14). The Court has already found that MCGP's belief that the Lawrence suit was not going to be covered under this policy was an unreasonable belief. Therefore, MCGP cannot obtain the protection afforded by the savings clause.

### B. Prejudice to Arrowood:

Arrowood, as an excess insurer, cannot disclaim liability under a policy solely based on the insured's failure to give notice. *Midwest Emp'rs*, 695 So. 2d at 1173 (Ala. 1997); *Lemuel*, 414 F. Supp. 2d 1037 (M.D. Ala. 2006). In order to disclaim liability, Arrowood would also need to demonstrate that it was prejudiced by the failure to give notice. The excess-liability policy gives Arrowood the right to "investigate any 'occurrence' or offense and settle any claim or 'suit' that might result." (Doc. # 46 Ex. A, Attachment B at 1). Arrowood irretrievably lost its contractual right to participate in the settlement negotiations when MCGP failed to give notice of the Lawrence suit, despite Lawrence's demands for an amount over the USF&G policy limits months before trial. Such a loss has been held, as a matter of law, to constitute prejudice to an excess-liability carrier under Alabama law. *See Lemuel*, 414 F. Supp. 2d at 1069.

Additionally, without notice, Arrowood was unable to set reserves for the Lawrence case. MCGP argues that the inability to set reserves did not prejudice Arrowood, as there is no evidence that Arrowood would have set a reserve of $500,000,

20

the amount MCGP demands Arrowood pay.  This Court is unpersuaded by MCGP's

argument.  Arrowood need not demonstrate that it would have set the correct reserve in

order to demonstrate prejudice.  It's inability to choose what reserve to set, in conjunction

with its inability to participate in the settlement of the case, amounts to prejudice as a

matter of law.[7]

### III.  MCGP's Breach of Contract Counterclaim:

MCGP's argues in its Counterclaim for Breach of Contract that because MCGP's

notice was reasonable, Arrowood has wrongfully refused to pay benefits to MCGP.  (Doc.

# 32).  However, as the Court indicated above, MCGP's delay in giving notice was, as a

matter of law, unreasonable.  Therefore, Arrowood's refusal to pay is not wrongful.

Therefore, Arrowood is entitled to judgment as a matter of law on MCGP's counterclaim

as well.

---

[7]MCGP also argues that there is no evidence that Arrowood would have done anything differently had notice been given on time, and therefore that Arrowood cannot demonstrate prejudice.  The *Lemuel* court dismissed a similar argument, finding it to be "unsupported and speculative at best," and insufficient to overcome a finding that the excess insurer's contractual rights had been lost due to the delayed notice.  414 F. Supp. 2d at 1069.

For the foregoing reasons, it is ORDERED that:

Plaintiff Arrowood's Motion for Summary Judgment is GRANTED.  Defendant MCGP's Motion for Summary Judgment is DENIED.

The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order.

DONE this 3rd day of December, 2010.


　　　　　　　　　　　　　　　　/s/ Mark E. Fuller
　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE